IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOEY HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:18-CV-704-RAH-CSC |
| | ) | (WO) |
| | ) | |
| JOHNATHAN WELCH, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on, August 1, 2018, by Joey Howard, a convicted felon housed in the Dale County Jail. (Doc. 1 at p. 2).  The Plaintiff alleges that on July 23, 2018, he was subjected to excessive force by Defendants when Jonathan Welch tased him in the back.  He also brings a claim based upon his "fear that the CO's and Police can come in at any time and tase or mistreat people." (Doc. 1 at p. 3).  The named Defendants are Jonathan Welch, Wally Olson, Steve Baxley, and Ron Nelson.  (Doc. 1 at p. 2).  The Plaintiff does not say whether he sues these Defendants in their official or individual capacities.  He seeks money damages. (Doc. 1 at p. 4).

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

The Defendants filed special reports (Docs. 32, Exs. 1-6; Doc. 35, Exs. 1-23), which included relevant evidentiary materials in support of this report, specifically affidavits, prison documents, and video evidence (Doc. 35, Exs. 1 and 4; Doc. 41, Exs. 1 and 4) addressing the claims presented by Howard.  In these documents, the Defendants deny they used excessive force against him or subjected the Plaintiff to oppressive conditions.

The Defendants also raise the defense of exhaustion in their special reports. (Docs. 32 at pp. 6-8; 35 at pp. 26-37).  Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit."  *Jones v. Bock,* 549 U.S. 199, 202 (2007). Thus, the Defendants argue that because the Dale County Jail utilizes a grievance procedure and the Plaintiff failed to file any grievance underlying the allegations of his complaint, he has failed to exhaust his administrative remedies and his claims are barred. (Docs. 32 at pp. 6-8; 35 at pp. 26-37).

After reviewing the special reports and exhibits, the court issued an order on October 24, 2018, requiring Howard to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 37).  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the

time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 37 at pp. 3-4).  Howard filed responses to this order. (Docs. 43 and 44).  Pursuant to the directives of the order entered on October 24, 2018, the court now treats the Defendants' special reports as a motion to dismiss with respect to the failure to exhaust claims and as a motion for summary judgment as to any remaining claims and concludes that judgment is due to be granted in favor of the Defendants.

## II.  STANDARD OF REVIEW

Based on the foregoing, the court deems it appropriate to treat the special report filed by the Defendants as a motion to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the Defendants' motion to dismiss.  *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense]. . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").  However, to the extent that the court concludes that the

3

plaintiff has properly exhausted his administrative remedies as to any claim, the court will address the merits of those claims on summary judgment.

The court has undertaken a thorough and extensive review of all the evidence in this matter.  After such review, the court finds that Howard has failed to exhaust his administrative remedies on each of his claims relating to the prison riot which resulted in Defendant Welch tasing him on July 23, 2018, and that this action is due to be dismissed on the basis of his failure to exhaust.  Indeed, it is undisputed that Howard never filed a written grievance concerning his allegations of excessive force or unconstitutional conditions to which he alleges he was subjected at Dale County Jail. Rather, Howard claims after he was tased, handcuffed and removed to a separate area of the jail that he made an emergency oral complaint to Lt. Baxley.  Lt. Baxley denies, however, that any complaint was made to him by the Plaintiff.  Even assuming the Plaintiff made an oral complaint as he claims, there is absolutely no evidence that the Plaintiff filed an appeal whether oral or in writing.  Accordingly, the court concludes for the reasons more fully discussed hereafter that this action is due to be dismissed on the basis of the plaintiff's failure to exhaust.

### III.  STATEMENT OF FACTS

In his complaint, the Plaintiff alleges that the Defendants used excessive force against him during a riot in the Dale County Jail on July 23, 2018.  Specifically, he claims that Defendant Welch tased him when he "was noncombative or posed no threat I

4

was following a direct order of going to my cell and shot in back." (Doc. 1 at p. 3).  He further claims that Defendants Baxley, Olson and Nelson "allowed" him to be tased.  *Id.* The Defendants unequivocally deny the allegations of the Plaintiff's complaint and have filed video evidence which documents Defendant Welch's encounter with the Plaintiff. The Defendants maintain that this video evidence affirmatively discounts the Plaintiff's claims.  (Doc. 35-1, Officer Chadwick's body camera video; Doc. 35-4, Officer Bryan's body camera video.)

A careful review of the video and documentary evidence in this matter demonstrates that on July 23, 2018, due to an inmate disturbance at Dale County Jail, the Dale County Sheriff's Office asked for assistance from the Ozark Police Department. Defendant Welch, an Ozark police officer who was previously employed by the Dale County Sheriff's Office and who worked in the Dale County Jail from 2010-2012, responded to the request and arrived at the jail shortly after the request was made.  Ozark police officers including Defendant Welch were notified by dispatch that inmates in a cell block were refusing to lock down in their cells and were becoming combative. Furthermore, Defendant Welch was aware of a prior riot at the Dale County Jail in 2007 and had responded to Dale County Jail a month before this incident due to an inmate's assault on a jailer.  (Doc. 35-20 at paras. 4-7).

Along with other Ozark police officers, including Lieutenant Michael Bryan and Officer Justin Chadwick, Defendant Welch met Defendant Baxley outside the jail.

Defendant Baxley holds the position of Jail Supervisor at the Dale County Jail. Defendant Baxley told the officers that inmates in Cell Block 2 were refusing to lock down in their cells despite multiple orders to do so.  (Doc. 35-20 at para. 10).

Upon entering the jail, Defendant Welch heard loud banging noises coming from behind the door leading to the cell blocks.  When entering the back portion of the jail where the cell blocks were located, Defendant Welch saw several inmates in Cell Block 2 outside their cells.  These inmates were ignoring commands from officers to return to their cells; they were also ignoring flashing overhead light signals by the tower worker to return to their cells. (Doc. 35-20 at para. 11).

After repeated unheeded orders to lock down in cells, the tower worker opened the door to Cell Block 2.  The officers entered Cell Block 2 with their tasers drawn and ordered inmates to get inside their cells.  Because the inmates in Cell Block 2 responded to these orders quickly, no force was used against any of the inmates in Cell Block 2. The officers then made sure that each individual cell was locked inside Cell Block 2 before they left.  The officers exited Cell Block 2 without further incident. (Doc. 35-20 at para. 13).

Shortly thereafter at the direction of Deputy Charles Duncan, the tower worker again flashed lights in all cell blocks to direct inmates to return to their cells for lockdown.  Several inmates in Cell Block 1 refused to return to their cells.  Defendant Welch looked through the window of Cell Block 1 and saw multiple inmates outside of

their cells.  He also saw food trays scattered around the floor of Cell Block 1, which was consistent with riotous behavior.  (Doc. 32-10 at paras. 14-15; Docs. 35-1, 35-4).

Corrections Officer Harvey Lee McLeod approached the door to Cell Block 1 and warned inmates that it was their last chance to go to their cells and lock down. Officer McLeod reminded the inmates in Cell Block 1 that the flashing lights required inmates to return to their cells.  Several inmates in Cell Block 1 including the Plaintiff, willfully disobeyed and remained outside their cells.  Officer McLeod announced to the officers, "Alright.  The ones here, guys, they ain't locking down."  Immediately before the officers entered Cell Block 1, Dale County Sheriff's Deputy Kendall Hatfield stated, "As soon as you go in, just drop the closest one to you.  Go ahead and make a point."  (Doc. 35-20 at paras. 16-17; Docs. 35-1, 35-4).

Upon Defendant Welch entering Cell Block 1, he encountered the Plaintiff directly in front of him and issued verbal orders for the Plaintiff and other inmates to return to their cells.  Plaintiff is six feet tall and weighed about 240 pounds; Defendant Welch stood about three inches shorter and weighed about fifty pounds less than the Plaintiff. The Plaintiff was on his feet and unrestrained; he was wearing an orange jumpsuit which was folded down at the waist and a white T-shirt.  He also had a white towel wrapped around his head and was wearing white socks on his hands. (Doc. 32-30 at paras. 18-19; (Docs. 35-1, 35-4).

Defendant Welch recognized the towel and socks as countermeasures against the effects of pepper spray and a Taser.   Defendant Welch believed that these were indications the Plaintiff had prepared himself for a physical confrontation with law enforcement.   The Plaintiff was also holding an object in his right hand.   In addition to the Plaintiff, Defendant Welch saw four other inmates outside their cells in Cell Block 1. One of those inmates was Michael Ethan Smith, whom Defendant Welch knew was waiting trial on a murder charge and was considered an escape risk.   All the inmates were on their feet and unrestrained.   (Doc. 35-20 at para. 20; Docs. 35-1, 35-4).

The Plaintiff was the closest inmate to the cell block door and he potentially posed the most immediate threat to Defendant Welch and the other officers.   The video evidence confirms that upon entering the cell block, Defendant Welch had his Taser drawn and ordered the Plaintiff to return to his cell three times.   The Plaintiff made no attempt to follow these orders.   Rather, the Plaintiff stood in the same place and turned sideways to Defendant Welch.   The Plaintiff then walked in the direction opposite the cells, passing in front of Defendant Welch at an angle from Defendant Welch's left to his right.   Defendant Welch testified that he discharged his Taser at the Plaintiff in an attempt to maintain order and safety in the Dale County Jail. (Doc. 35-20 at para. 21; Doc. 35-1, 35-4).

By the time Defendant Welch discharged his Taser, about two minutes had elapsed since the jailers first ordered the inmates in the Plaintiff's cell block to go to their

cells.  The video evidence confirms that at 12:58:32 p.m., the lights had begun to flash in all cell blocks.  At 12:59:41 p.m., Officer McLeod warned the inmates in the Plaintiff's cell block that it was their last chance to comply with the order to go to their cells.  At 1:00:35 p.m., upon entering Cell Block 1, Defendant Welch gave the Plaintiff three rapid orders to go to his cell.  At 1:00:36 p.m., Defendant Welch discharged his Taser against the Plaintiff.  The evidence shows that the Plaintiff disobeyed the flashing light signal to return to his cell and disobeyed Officer McLeod's and Defendant Welch's verbal commands prior to being tased.  (Doc. 35-20 at para. 22; Docs. 35-1, 35-4).

Defendant Welch testified by affidavit that he used force against the Plaintiff in a good faith effort to restore discipline.  He further explained that he chose to use his Taser instead of a baton because the Taser allows an officer to subdue a noncompliant subject from a safter distance than a baton and without causing the actual physical injuries that baton strikes can inflict.  Also, Defendant Welch chose not to use pepper spray because it can affect everyone in the room in a closed environment.  Additionally, the Plaintiff had the towel around his head available to pull down over his mouth and nose to counteract the effect of the spray.  Finally, Defendant Welch explained that the Taser allowed him to avoid a hand-to-hand fight with the Plaintiff.  (Doc. 35-20 at para. 23).

The Taser probes struck the Plaintiff on the right arm and on the right side of the chest near his collar bone.  The Taser discharged for one complete five-second cycle, which succeeded in gaining the Plaintiff's compliance.  After Defendant Welch engaged

the Plaintiff with the Taser, the other inmates in the Plaintiff's cell block immediately returned to their cells as ordered.  (Doc. 35-20 at para. 24; Docs. 35-1, 35-4).

Defendant Welch ordered the Plaintiff to place his hands behind his back so he could be handcuffed.   The Plaintiff complied with this command and submitted to cuffing.  Officer Chadwick applied his handcuffs to the Plaintiff.  Officer Chadwick also assisted Defendant Welch when removing the Taser probes from the Plaintiff. (Docs. 35-20 at para. 25 and 32-21 at para.11; Docs. 35-1 and 35-4).  The video evidence clearly shows Officer Chadwick removing one of the probes from the front of the Plaintiff's shirt in the right chest area.  (Doc. 35-1; Doc 35-20 at para. 34).  Indeed, Defendant Welch testified that the probe lodged in the front of Plaintiff's shirt demonstrates he did not shoot the Plaintiff in the back.  (Doc. 35-20 at para. 35).

While Defendant Welch and Officer Chadwick were removing the probes, the Plaintiff requested medical attention.   The Plaintiff did not have any visible injuries. Nevertheless, Officer Chadwick notified two members of the Dale County Sheriff's Office of the Plaintiff's request for medical attention.  (Docs. 35-20 at para. 26 and 32-21 at para.11; Docs. 35-1 and 35-4).

Officer Chadwick escorted the Plaintiff to one of the holding cells at the front of the jail so he could be isolated from Cell Block 1 and await the arrival of medical personnel.  (Docs. 35-20 at para. 27 and 32-21 at para.11; Docs. 35-1 and 35-4).  One of the sheriff's office personnel radioed a request for EMS to respond.  (Docs. 35-20 at para.

26; Doc. 35-1).  The Plaintiff received medical attention and no significant injuries were found.  (Doc. 32-4 at para. 20-21).

 With respect to the defense of exhaustion, the evidence unequivocally demonstrates that the Dale County Jail provides a grievance procedure in its Inmate Rules and Regulations.  Indeed, upon his admission to the Dale County Jail on May 18, 2018, the Plaintiff signed a form acknowledging his understanding of the inmate grievance process:

> INMATE GRIEVANCE PROCESS AND ACKNOWLEDGEMENT
> FORM AND UNDERSTANDING OF INMATE RULES
>
> While incarcerated in [the] Dale County Jail should you have to file a complaint or request for Care items or any other complaints you may have you must request an Inmate Request Form which will be provided by Correctional Staff.  Fill out the form and give it to Staff [t]o forward your form to the Jail Supervisor Steven Baxley to remedy your complaint.  By signing below you understand the grievance process and the Inmate rules.  Refusal to sign will not be considered that you do not understand.

(Doc. 35-19 at p. 2; Doc. 32-1 at p. 20).  Despite the Plaintiff's acknowledgement of the inmate grievance process, he never filed a grievance regarding any of the matters contained in his complaint.  The Plaintiff does not allege that he was prevented from filing a grievance; rather he claims that he made an emergency oral complaint to Defendant Baxley.  (Doc. 43 at paras. 3, 5).  Defendant Baxley, however, denies that the Plaintiff ever filed a grievance concerning the use of force incident or the alleged oppressive conditions in Dale County Jail.  (Doc. 32-4 at paras. 8-10; Doc. 35-23 at para.

8).   More specifically, Defendant Baxley denies that the Plaintiff ever made any oral complaint to him.  (Doc. 50-1 at para. 2).

It is undisputed that Dale County Jail's grievance procedure allows "grievances of an emergency nature [to] be made orally" and states they will be "handled immediately." (Doc. 32-4 at para. 9).   However, the Plaintiff does not explain how his circumstances constituted an emergency permitting an oral grievance.   According to Defendant Baxley, Jail Supervisor, emergencies are situations in which it is unreasonable or impractical to expect the inmate to submit a written grievance or request, such as the onset of an emergency medical condition.  (Doc. 50-1 at para.4).

In the instant action immediately following the taser application, the Plaintiff was handcuffed and promptly escorted to a holding cell.   The Plaintiff received medical attention and no significant injuries were found.  (Doc. 32-4 at para. 20-21).   There is no evidence that the Plaintiff was prevented by any emergency medical condition or other circumstance from submitting a written grievance about the tasing.   Indeed, following the tasing, the Plaintiff was handcuffed and led to another part of the jail where he had contact with other officers but was away from Cell Block 1 and out of the presence of Defendant Welch. (Doc. 35-1).

Even were the Court to consider the Plaintiff's alleged oral complaint as satisfying the first step of the grievance process, there is no evidence that the Plaintiff made any effort to utilize the appellate grievance process to pursue his claim. Furthermore, the

Plaintiff does not claim that he exhausted the appeal process. Indeed, the Dale County Jail's Inmate Rules and Regulations state, "[i]f the Inmate is not satisfied with the action taken on the Inmate Request Form, he/she May appeal in writing up the Chain of Command to the Dale County Sheriff who is the final source of administrative appeal." (Doc. 35-18 at p. 4 para. 4). Also, as Defendants Sheriff Wally Olson, Captain Ron Nelson and Lt. Baxley testified in their declarations, "[i]f an inmate is not satisfied with the response, the inmate may appeal in writing up the chain of command to the Dale County Sheriff. The Sheriff makes the final decision on any request or grievance." (Doc. 32-3 at p. 2 para. 10; Doc. 32-4 at p. 2 para. 8; Doc. 38-1 at p. 2 para. 8). Indeed, three Dale County Jail officials, including the Sheriff, have testified that they did not receive a grievance from the Plaintiff. (Doc. 32-3 at p. 3 para. 12; Doc. 32-4 at p. 2 para. 10; Doc. 35-23 at p. 2-3 para. 8; Doc. 38-1 at p. 3 para. 10).

## IV.  DISCUSSION

### A. EXHAUSTION

The Defendants raise the defense of exhaustion in this action. In addressing the requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id.* (affirming dismissal of prisoner's civil rights suit for failure to satisfy

13

the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th      Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before ***filing*** suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison . . . must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original).  Furthermore, the law is well-settled that "the question of exhaustion under the PLRA [is] a threshold matter that [federal courts must] address before considering the merits of the case.  Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement."  *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)).  The court will therefore "resolve this issue first."  *Myles*, 476 F. App'x at 366.

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict,

take the plaintiff's version of the facts as true.  If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.  If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion." *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008).  Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing].  The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations omitted).  Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]." *Id*.

Upon review of the complaint, the Defendants' special report and the undisputed evidentiary materials filed in support thereof and the Plaintiff's response to the special report, the Court concludes that the Defendants' motion to dismiss is due to be granted for the Plaintiff's failure to exhaust his Eighth Amendment claims of excessive force and alleged oppressive conditions.  Indeed, it is undisputed that the Dale County Jail had a grievance procedure in place which included appellate remedies. (Doc. 35-19 at p. 2; Doc. 32-1 at p. 20).  Accepting the Plaintiff's version of facts that he made an oral

emergency complaint to Defendant Baxley, which is specifically denied by Defendant Baxley (Doc. 50-1 at para. 2), it is also undisputed that the Plaintiff never lodged any appeal from this emergency oral complaint. (Doc. 32-3 at p. 3 para. 12; Doc. 32-4 at p. 2 para. 10; Doc. 35-23 at p. 2-3 para. 8; Doc. 38-1 at p. 3 para. 10). Importantly, the Plaintiff does not allege that he utilized the appeal process and exhausted his remedies. Accordingly, the Court concludes that the Plaintiff's Eighth Amendment excessive force and conditions claims are due to be dismissed because the Plaintiff failed to exhaust these claims via the prison's grievance procedure. Thus, the Court concludes that this entire action could be dismissed on the basis of exhaustion alone. However, the Court recognizes that the principles of absolute immunity, as explained below, also mandate dismissal of claims made against the Defendants in their individual capacities for money damages.

### B. ABSOLUTE IMMUNITY

To the extent Howard requests monetary damages from the Defendants in their official capacities, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit

> must be unequivocally expressed in the text of [a] relevant statute. Waiver
> may not be implied.  Likewise, Congress' intent to abrogate the States'
> immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation

marks and citations omitted).  Thus, a state official may not be sued in his official

capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst*

*State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has

abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution
> states that "the State of Alabama shall never be made a defendant in any
> court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has
> recognized that this prohibits Alabama from waiving its immunity from
> suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978)

(consent is prohibited by the Alabama Constitution). "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v.*

*Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916

F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the Defendants are entitled

to sovereign immunity under the Eleventh Amendment for claims seeking monetary

damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert*

*Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials

sued in their official capacities are protected under the Eleventh Amendment from suit

for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir.

1995) (holding that damages are unavailable from state official sued in his official capacity). With respect to the Plaintiff's claims brought against the Defendants in their individual capacities, the Court concludes that the principles of respondeat superior also mandate dismissal of claims premised upon vicarious liability.

## C. RESPONDEAT SUPERIOR

The Plaintiff makes no allegations that Defendants, other than Officer Welch, used excessive force against him or personally took any actions to subject him to oppressive conditions while he was housed in Dale County Jail on July 23, 2018. Rather, he complains that Defendant Officer Welch used excessive force against him by tasing him during a prison riot after he refused multiple direct orders to return to his cell. However, he does not allege that the other Defendants participated in the conduct about which he complains. Rather, he alleges that the other Defendants are liable to him because they "allowed" the tasing to occur. (Doc. 1 at p. 3). To the extent the Plaintiff alleges that Defendants Sheriff Wally Olson, Captain Ron Nelson and Lt. Baxley are liable to him in their supervisory positions based on a theory of respondeat superior, those claims must fail. The law is well established; supervisory officials cannot be held liable in §1983 actions under any theory of respondeat superior or vicarious liability. *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).

Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for the alleged excessive force and unconstitutional conditions could attach to Defendants only if they either "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Indeed, a causal connection maybe established either when (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or when (2) "a supervisor's custom or policy . .

. result[s] in deliberate indifference to constitutional rights" or when (3) "facts support an inference that the supervisor directed the subordinate to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (Citations omitted). The Plaintiff has alleged no such facts. (Doc. 1 at pp. 5-9). Thus, the Court concludes that the Plaintiff's claims against the named supervisory Defendants Sheriff Wally Olson, Captain Ron Nelson and Lt. Baxley also fail because the Plaintiff has not alleged their personal involvement in the actions against him, nor has he alleged any facts demonstrating the necessary causal connection between them and the unnamed subordinates.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion to dismiss and or for summary judgment (Docs. 32 and 35) be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **May 11, 2021**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 26th day of April, 2021.


    /s/   Charles S. Coody
UNITED STATES MAGISTRATE JUDGE